IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | MAG. NO. 19-00635 KSC |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATION THAT DEFENDANT GERALD RAFAEL GARCIA BE FOUND NOT MENTALLY COMPETENT TO STAND TRIAL |
| vs. | |
| GERALD RAFAEL GARCIA, | |
| Defendant. | |

FINDINGS AND RECOMMENDATION THAT
DEFENDANT GERALD RAFAEL GARCIA BE FOUND
NOT MENTALLY COMPETENT TO STAND TRIAL

On October 30, 2019, the Court held a hearing to determine Defendant Gerald Rafael Garcia's mental competency to stand trial in accordance with 18 U.S.C. § 4247(d). See ECF No. 24. Assistant United States Attorney Marc A. Wallenstein appeared for the United States and Assistant Federal Defender Craig W. Jerome appeared for Defendant.

Having considered the testimony presented at the hearing, the exhibits received into evidence, the arguments of counsel, and the relevant legal authority, the Court finds by a preponderance of the evidence that Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense and that Defendant is

not competent to stand trial.[1]

## BACKGROUND

Defendant Gerald Rafael Garcia has been charged in a criminal complaint with making threats via interstate communications under 18 U.S.C. § 875(c). See ECF No. 1. Specifically, the Affidavit in support of the criminal complaint states that Defendant sent an email message to a number of people threating to injure the residents of the Parkway Community neighborhood where Defendant lived. See id. at 10-13. According to the Affidavit, Defendant allegedly sent the email because he believes that approximately 75% of his neighbors in the Parkway Community are complicit in targeting him through electronic harassment using the microwave, radio, and other technological means. See id. at 4.

On July 18, 2019, the Court granted the government's motion for a hearing to determine Defendant's competency to stand trial. See ECF Nos. 12, 15. The Court issued an order directing that Defendant be evaluated as to his present

---

[1] The Ninth Circuit has not directly addressed whether a magistrate judge must issue findings and recommendations to the district court or may issue orders regarding competency to stand trial under 18 U.S.C. § 4241. See United States v. Gowadia, No. CR. 0500486 SOM, 2009 WL 3526656, at *1 (D. Haw. Oct. 30, 2009). In an abundance of caution, the Court issues this decision as a Findings and Recommendation. Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court. A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

mental competency pursuant to 18 U.S.C. § 4241 and Federal Rule of Criminal Procedure 12.2(c)(1)(A).  See ECF No. 15.

Dr. Sharon M. Tisza conducted a three-hour clinical interview with Defendant at the Federal Detention Center - Honolulu on September 4, 2019 and, in accordance with 18 U.S.C. § 4241(b), provided a forensic psychiatric evaluation (the Report).  See ECF No. 19.  Dr. Tisza's Report was filed on September 23, 2019.  See id.  In the Report, Dr. Tisza diagnosed Defendant with Delusional Disorder, Persecutory Type and opined that Defendant "is presently suffering from a mental disease or defect . . . rendering him Mentally Incompetent to Stand Trial to the extent that he is unable to assist properly in his defense." Id. at 7.

A hearing under 18 U.S.C. § 4247(d) was initially scheduled for September 25, 2019.  See ECF Nos. 15-18.  At the September 25 hearing, the Court discussed with the parties how they wished to proceed in the light of the Report and the defendant's rights set forth in Section 4247(d).  Section 4247(d) affords the defendant an opportunity "to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. 4247(d).  Through counsel, Defendant expressed a desire to confront and cross-examine Dr. Tisza about her findings in the Report.

The hearing was continued so that the Government could produce Dr. Tisza for examination.  See ECF No. 21.  On October 20, 2019, the Court held a

competency hearing in accordance with Section 4247(d) and, among other evidence, Dr. Tisza testified as to her opinions and the Report.

Section 4241 sets forth the procedures to determine the competency of a defendant in federal court, from a motion to a psychological examination to a report to a hearing. See 18 U.S.C. 4241(c) (stating that competency hearings "shall be conducted pursuant to the provisions of section 4247(d)"). Section 4247(d) provides the procedures required for a competency hearing. See 18 U.S.C. § 4247(d).

## EVIDENCE

### A. Dr. Tisza's Testimony, Findings, and Conclusion

Dr. Tisza had the opportunity to observe and interview Defendant during the course of her three-hour clinical interview and also interviewed Defendant's sister, mother, and step-father. See ECF No. 19 at 7. Dr. Tisza testified, consistent with her Report, that Defendant's Delusional Disorder is an elaborate delusional system involving a "false fixed belief" that he is a "targeted individual" and that other individuals, including those living in his apartment complex in California and in his condominium complex in Hawaii, have been torturing him since 2012. See ECF No. 19 at 4.

Dr. Tisza testified that Defendant's disproportionate reactions to his experiences and the severe nature of the threats at issue supported her diagnosis.

4

Dr. Tisza further testified that Defendant had no insight into his symptoms of mental illness and, when asked by her during their interview, was adamant that there was "no chance" that his beliefs may be due to mental illness.  Dr. Tisza testified that her conclusion that Defendant was suffering from Delusional Disorder, Persecutory Type, rendering him unable to assist properly in his defense, was based on information provided by the government, her interview with Defendant, her interviews with Defendant's family, and the totality of her evaluation process.

      On cross-examination, Dr. Tisza testified that she did not conduct any objective diagnostic tests on Defendant during their interview but explained that these types of tests are not part of her diagnostic tools as a forensic psychiatrist. Dr. Tisza testified that she relies on an in-depth clinical interview and her twenty years of clinical experience to make her diagnosis.  Dr. Tisza conceded on cross examination that not all people with false fixed beliefs have a mental disease or defect; yet, she maintained her opinion that Defendant did have a mental disease or defect that rendered him mentally incompetent to the extent that he is unable to assist in his defense.  Critically, Dr. Tisza testified that Defendant's elaborate delusional system is directly related to his alleged offense conduct.

      The Court finds the testimony of Dr. Tisza, a forensic psychiatrist with over twenty years of experience, to be credible and persuasive.  The Court

received the Report into evidence and the government did not present any other evidence at the hearing.

### B. Two Exhibits Submitted by Defendant

Defendant filed two exhibits that were admitted into evidence. See ECF Nos. 20, 21. Exhibit A is a statement to the Court written by Defendant on September 24, 2019. See ECF No. 20-1. Exhibit B is a redacted excerpt of discovery that Defendant refers to in his written statement. See ECF No. 20-2.

Exhibit A is an email sent by Defendant to his counsel entitled "Statement for September 25th Hearing – Revised" (Statement). See ECF No. 20-1. In that Statement, Defendant recounts that he was arrested on July 5, 2019, and charged with terroristic threatening pertaining to interstate communications related to emails that he sent. See id. at 2. Defendant states that "[a] more complete picture of [his] case, however, should include the 6+ years [he] was victimized by organized stalking and electronic harassment at the hands of suspects that remain only partially identified to this day." Id. In his Statement, Defendant discusses the scheduling of the competency hearing and his surprise regarding Dr. Tisza's determination that he is not competent to stand trial. Id.

Defendant states that he does not believe that he "gave [the doctor] any overwhelming reason to think [he is] not capable of being knowingly responsible for [his] actions." Id. Defendant then provides details regarding the

6

"electronic harassment" that he has experienced over years "delivered in two primary forms: as directed energy weapon (DEW) attacks and as 'psychotronic' attacks." Id. Defendant states that he is "aware that law enforcement as well as the legal and mental communities have yet to acknowledge the existence of such exotic technologies." Id. Defendant refers the Court to letter he sent to the Kaneohe Police Department in 2018 that further "detail[s] a microwave device attack [he] suffered back in December 2017." Id. The letter referenced by Defendant is the second exhibit that he submitted, Exhibit B.

      Exhibit B is a letter dated September 11, 2018, that appears to be sent by Defendant to the Kaneohe Police Department Criminal Investigations Unit Staff. See ECF No. 20-1 (Bates stamped GARCIA_000127-134). In the letter, Defendant stated that police officers have responded to calls from Defendant's home in the Parkway Community and that during those incidents he mentioned to the officers that he believed his property was "damaged by someone who belonged to a group of neighbors who were recruited to take part in a covert defamation, provocation, and electronic attack campaign against [him], which continues to this day." Id. at 2. Defendant states that he provided the officers with information regarding Defendant's "early experiences of being victimized by organized stalking, harassment, and weaponized sonic and EMF technologies, some that have been physically injurious, and others that are startlingly invasive psychologically."

Id. Defendant's letter details "evidence" that he has collected of the electronic harassment that he has experienced on a daily and nightly basis from other residents in the Parkway Community. See id. at 3-5. Defendant also describes an alleged attack that he experienced when he was living in California. See id. at 5. Defendant includes a transcript of "Audio capture inside wall near head 27Nov17" and lists several other audio files of "Vocal capture" and "microwave." See id. at 7-8. Defendant's letter ends with an "Analysis" section regarding the audio files that he listed. See id. at 8-9.

During the hearing, the Court recited the rights afforded to a defendant under Section 4742(d). The Court asks Defendant if he had further evidence to present or wished to testify. Counsel for Defendant stated that he had not further evidence and that Defendant understood his right to testify at the hearing but declined.

## DISCUSSION

"The conviction of an accused person while he is legally incompetent violates due process." Pate v. Robinson, 383 U.S. 375, 378 (1966). Competency requires more than a defendant's orientation to time and place and some recollection of the facts. See Dusky v. United States, 362 U.S. 402, 78-89 (1960). Competency depends on whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and

8

whether he has a rational as well as a factual understanding of the proceedings against him." Id.

The standard for determining competency, also set forth in 18 U.S.C. § 4241(d), states that a defendant is incompetent if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or ***to assist properly in his defense***." 18 U.S.C. § 4241(d) (emphasis added). Evidence of competency may include medical opinions and observations of the defendant. See Maxwell, 606 F.3d at 568. The government has the burden of establishing, by a preponderance of the evidence, that the defendant is competent to stand trial. See United States v. Frank, 956 F.2d 872, 875 (9th Cir. 1991).

Here, only the second prong of the Section 4241(d) standard applies. Dr. Tisza opined in the Report and during her testimony that Defendant's disease or defect affects only his ability to currently assist properly in his defense, not his ability to understand the nature and consequences of the proceedings against him. The Court has carefully considered the Report and testimony of Dr. Tisza. The Court agrees with her conclusion that, at this time, Defendant is unable to assist properly in his defense.

Dr. Tisza diagnosed Defendant with Delusional Disorder, Persecutory

9

Type based on his false fixed belief that he is a targeted individual subjected to electronic torture and harassment. The only other evidence before the Court, the Exhibits submitted by Defendant, further support this determination. The Court agrees with Dr. Tisza's finding that Defendant appears to have no insight into his symptoms of mental illness and the charge in this case is directly related to Defendant's delusion. Because of his mental disease or defect, Defendant is unable to rationally understand and evaluate his case, which impedes his ability to assist properly in his defense.

The Court finds by a preponderance of the evidence that Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.

## CONCLUSION

For the reasons discussed above, the Court finds by a preponderance of the evidence that Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is not able to assist properly in his defense. Accordingly, the Court concludes that Defendant is not competent to stand trial.

Because the Court finds that Defendant is presently incompetent to stand trial, the Court must commit Defendant to the custody of the Attorney General. See 18 U.S.C. § 4241(d). The Attorney General must then place

Defendant in a suitable facility for treatment for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future, Defendant will attain the capacity to permit the trial to proceed.  See 18 U.S.C. § 4241(d).  This commitment to the custody of the Attorney General for treatment is mandatory.  See United States v. Strong, 489 F.3d 1055, 1063 (9th Cir. 2007).  Accordingly, the Court FINDS AND RECOMMENDS that the district court ORDER as follows:

  (1) Defendant is declared to be mentally incompetent to proceed with trial in this case;

  (2) Defendant is committed to the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4241;

  (3) The Attorney General shall, pursuant to 18 U.S.C. § 4241(d), hospitalize Defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed;

  (4) On or before the end of this four-month period, the Attorney General or his designee shall file a report with the Court on the mental condition of Defendant;

  (5)  The delay of these proceedings is excludable time under 18

U.S.C. §§ 3161(h)(1)(A) and (F) of the Speedy Trial Act.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, OCTOBER 31, 2019.



Wes Reber Porter
United States Magistrate Judge

**UNITED STATES V. GARCIA; MAG. NO. 19-00635 KSC; FINDINGS AND RECOMMENDATION THAT DEFENDANT GERALD RAFAEL GARCIA BE FOUND NOT MENTALLY COMPETENT TO STAND TRIAL**